## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. RICHTER, (S11355), | |
| Petitioner, | |
| v. | Case No. 16-cv-07660 |
| RANDY PFISTER, | Judge Martha M. Pacold |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

William J. Richter, a prisoner incarcerated at the Stateville Correctional Center, brings this habeas corpus action pursuant to 28 U.S.C. § 2254, challenging his 2010 conviction in the Circuit Court of the Sixth Judicial Circuit, Macon County, Illinois. Before the court are Richter's amended petition, [26], motion for extension of time, [45], application to proceed *in forma pauperis* ("IFP"), [48], and motion for attorney representation, [49]. For the reasons below, the amended habeas petition, [26], is denied on the merits and the court declines to issue a certificate of appealability. The motions for extension of time, [45], IFP, [48], and attorney representation, [49], are denied. The clerk is instructed to: (1) update the docket to reflect that Respondent Randy Pfister is "Warden, Stateville Correctional Center"; (2) strike Joel Brodsky's appearance, [21], from this case; (3) update the docket to reflect that petitioner is proceeding *pro se*; and (4) enter a judgment in favor of respondent. The clerk is instructed to send a copy of this opinion and the court's judgment to petitioner.

## BACKGROUND

### I.     Factual Background and State Court Proceedings

The following factual background comes from the record before the Illinois Appellate Court, which was the last court to adjudicate Richter's arguments on the merits. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). State court factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Brumfield v. Cain*, 576 U.S. 305, 322 n.8 (2015) (quoting 28 U.S.C. § 2254(e)(1)).

In October 2008, petitioner William J. Richter was charged in the Circuit Court with first-degree murder for the death of Dawn Marquis. *Illinois v. Richter*, 977 N.E.2d 1257, 1259 (Ill. App. Ct. 2012) (decision on direct appeal); [1-2] at 16–72.[1] Richter and Marquis lived together for seventeen years and had two children together. *Richter*, 977 N.E.2d at 1259. Joe Hoffman had known Richter since 1991, worked as a mechanic for or with Richter in an automobile repair business, and lived in a camper on Richter's property. *Id.* at 1267. According to Hoffman's testimony at trial, Hoffman shot Marquis at Richter's direction while Marquis was in her car in Richter's driveway. *Id.* The shooting occurred shortly after Marquis had moved out of Richter's home and Richter had voiced concern that Marquis would take the children away from him. *Id.* at 1264, 1267–68. Hoffman was arrested in Florida; when questioned by police there, "Hoffman admitted that he shot [Marquis]. Hoffman initially denied [Richter]'s involvement. He later explained that he was afraid of [Richter] because [Richter] had physically assaulted him in the past. When Hoffman was returned to Illinois, he spoke with his sister, who convinced him that he should answer police questions truthfully. Thereafter, Hoffman told police about [Richter]'s involvement." *Id.* at 1267–68.

Before trial, the state filed a motion *in limine* seeking to admit numerous hearsay statements that Marquis made to family members, neighbors, coworkers, her work supervisor, a therapist, and her attorney. The Illinois Appellate Court's decision describes Marquis's statements in detail; the details of each statement vary, but a general description of the statements is that Marquis was leaving Richter and moving out of their home, that he had threatened to kill her, and that she feared that he was going to kill her or have her killed. *Richter*, 977 N.E.2d at 1259–62. "The evidence presented at the hearing on the State's motion *in limine* showed that the majority of Dawn's statements were made within a reasonably short time before the event at issue, and, overall, were within six months of her death." *Id.* at 1273.

The state sought to present Marquis's statements largely through the testimony of witnesses who testified that Marquis made the statements to them, as well as through several recordings (phone call, voicemail, and text message). The state's basis for admitting the statements was an Illinois statute establishing an exception to the hearsay rule in domestic violence prosecutions when the declarant is unavailable to testify. *Id.* at 1259.

---

[1] Bracketed numbers refer to docket entries and are followed by page or paragraph numbers. Page numbers refer to the CM/ECF page number.

In response to the state's motion *in limine* seeking to admit the statements, Richter contested the reliability of the statements and "argued, in part, that [Marquis]'s statements should not be admitted under [the Illinois statute] because they did not have 'substantial guarantees of trustworthiness.'" *Id.* at 1262–63.

The trial court held a hearing on the motion *in limine* at which the state presented 14 witnesses as well as exhibits. [15-3] at 80–236 (hearing transcript); *Richter*, 977 N.E.2d at 1259–63. The court subsequently issued a written order admitting most of Marquis's statements under the Illinois statute. [15-2] at 410–11 (order); *Richter*, 977 N.E.2d at 1264.

Accordingly, at trial in October 2010, the state presented, among other evidence, numerous witnesses who testified about Marquis's statements to them, as well as recordings. *Richter*, 977 N.E.2d at 1264–66. Richter was convicted and later sentenced to seventy-five years in prison. *Id.* at 1269.

On direct appeal, Richter contended that the admission of Marquis's statements to relatives, friends, and coworkers violated both the Illinois statute and the Confrontation Clause. *Id.* at 1269. The Illinois Appellate Court rejected both the statutory and constitutional arguments and affirmed Richter's conviction on October 22, 2012. *Id.* at 1271, 1274, 1283–84, 1285–86. The court rejected the Confrontation Clause argument on the ground that "government involvement is required for a statement to be deemed testimonial hearsay," *id.* at 1280, and none of Marquis's statements were made to government officials. The Illinois Supreme Court denied leave to appeal on January 30, 2013. *Illinois v. Richter*, 982 N.E.2d 773 (Ill. 2013); [1-2] at 73–74. Richter filed a petition for a writ of certiorari to the U.S. Supreme Court, which was denied. *Richter v. Illinois*, 568 U.S. 1234 (2013).

Richter filed a *pro se* petition for postconviction relief asserting ineffective assistance of counsel, including on the basis of the admission of Marquis's statements. The Circuit Court dismissed the petition on January 31, 2014. *Illinois v. Richter*, No. 08 CF 1474 (Cir. Ct. Macon Cty. Jan. 31, 2014); [1-3] at 1–5.[2] Richter appealed *pro se*. The Illinois Appellate Court affirmed in a summary order on December 7, 2015. *Illinois v. Richter*, No. 4-14-0155 (Ill. App. Ct. Dec. 7, 2015); [1-3] at 6–9. Richter filed a *pro se* petition for leave to appeal to the Illinois Supreme Court. The Illinois Supreme Court denied the petition on March 30, 2016. *See* [1-3] at 44.

---

[2] Pages 2–3 of the copy of this decision in the record appear to be in reverse order.

3

## II.    Federal Court Proceedings

Having exhausted state court remedies, Richter filed this timely federal habeas corpus petition under 28 U.S.C. § 2254.

Richter initially filed his federal habeas petition *pro se* in the United States District Court for the Central District of Illinois.    [1].    The case was later transferred to this court.    *See* [7].    Attorney Joel Brodsky filed an appearance on behalf of Richter.    [21].    Upon Brodsky's appearance, Richter was granted leave to file a counseled amended petition; Brodsky filed the amended petition on Richter's behalf.    [25]; [26].    Respondent Randy Pfister answered the amended petition. [27].    On November 27, 2017, Brodsky filed a reply on Richter's behalf, such that the amended petition was fully briefed.    [30].

While the fully briefed amended petition was pending, the Executive Committee of the United States District Court for the Northern District of Illinois suspended Brodsky from the practice of law before this court for one year based on conduct in an unrelated case.    [34].    The Executive Committee also referred the matter to the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). *See* [34].    On November 13, 2020, based on a recommendation from the ARDC, the Illinois Supreme Court ordered a suspension of Brodsky's law license for at least two years and until further order of the Illinois Supreme Court, retroactive to June 19, 2019.    *In re Brodsky*, IL Disp. Op. M.R. 30470 (Ill. Sup. Ct.), 2020 WL 7241127. At this point, as noted above, the amended petition had been fully briefed since November 27, 2017.    *See* [26], [27], [30].

On December 27, 2019, the court received a letter from Richter that said he had repeatedly contacted Brodsky about his case.    [40] at 1.    Richter attached a response from Brodsky explaining that Brodsky was suspended from the practice of law and was prohibited from answering Richter's questions or otherwise discussing his case.    [40] at 2.

Brodsky cannot represent Richter at this time due to his suspension by the Executive Committee and the Illinois Supreme Court.    Brodsky's appearance [21] is stricken.    Richter has filed a motion for attorney representation [49], which the court addresses below.    Because no other attorney has appeared or been appointed by the court, Richter proceeds *pro se*.

Despite Richter's return to *pro se* status and his motion for attorney representation, there is no reason to delay the adjudication of the amended habeas petition.    The fact that Brodsky was suspended does not require the voiding of Brodsky's filings in this case before his suspension.    *See United States ex rel. Ortiz*

4

*v. Sielaff*, 542 F.2d 377, 380 (7th Cir. 1976) ("agree[ing]" with district court's reasoning that "the subsequent disbarment of the counsel for reasons having nothing to do with the instant case was irrelevant to his performance at petitioner's trial"); *United States v. Blake*, No. 16-cr-74, 2019 WL 3285956, at *2 (N.D. Ind. July 22, 2019), *appeal dismissed*, 965 F.3d 554 (7th Cir. 2020); *see also Vance v. Lehman*, 64 F.3d 119, 123–24 (3d Cir. 1995) ("[W]here breaches of professional responsibility are unrelated to the representation of the defendant, courts have not regarded the imposition of sanctions as relevant to the adequacy of attorney representation.") (collecting cases).   Brodsky filed the amended petition and reply before his suspension and before the suspension's date of retroactive effect.   On review of the Seventh Circuit and district court decisions regarding the suspension, *Twyman v. S & M Auto Brokers, Inc.*, 748 F. App'x 705 (7th Cir. 2019); *Twyman v. S&M Auto Brokers*, No. 16-cv-4182, 2018 WL 1519159 (N.D. Ill. Mar. 28, 2018), there is no indication that the basis of the suspension was relevant to Brodsky's representation of Richter or performance in this case.   And while the amended petition pursued only a single issue instead of the nine originally brought by Richter *pro se*, reducing the number of claims may be a matter of litigation strategy and is not *per se* improper.   *United States v. Stokes*, 726 F.3d 880, 887 (7th Cir. 2013).

The court therefore proceeds with the adjudication of the amended habeas corpus petition.

## ANALYSIS

## I.   Amended Habeas Corpus Petition

The amended petition argues that the introduction at trial of Marquis's statements to friends, relatives, and coworkers that she feared Richter was going to kill her violated the Confrontation Clause of the Sixth Amendment.   [26] at 2. The Illinois Appellate Court held that there must be government involvement for a statement to be testimonial.   Marquis's statements were made to family members, relatives, and coworkers, not government officials.   The court therefore rejected Richter's Confrontation Clause claim.   Richter contends that the Illinois Appellate Court's conclusion that Marquis's statements were not testimonial and that the Confrontation Clause did not apply "was contrary to, and involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."   [26] at 5.   For the reasons below, the court denies the amended petition.

## A.    Legal Standard

28 U.S.C. § 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides as relevant:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . .

The "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citations and internal quotation marks omitted).

Richter's amended petition and the reply contend that the Illinois Appellate Court's decision was both contrary to and an unreasonable application of clearly established federal law, but do not clearly distinguish between the "contrary to" clause and the "unreasonable application" clause. The standards differ. A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision is an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle" from Supreme Court precedent but "unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citation and quotation marks omitted).

Richter's arguments focus not on the application of law to facts, but on the Illinois Appellate Court's legal analysis. Specifically, Richter's arguments attack the court's adoption of a *per se* rule (that without government involvement a statement cannot be testimonial) and the consequence that the court did not apply the "primary purpose" test (discussed below) to the facts of this case, i.e., Marquis's statements. This is an argument that the Illinois Appellate Court's decision was "contrary to" clearly established federal law. Even so, as discussed below, the

analysis does not turn on the distinction between "contrary to" and "unreasonable application of," but on the absence of clearly established federal law.

For the purposes of § 2254(d)(1), "clearly established Federal law" means the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Lisle v. Pierce*, 832 F.3d 778, 780 (7th Cir. 2016). Section 2254(d)(1)'s "backward-looking language requires an examination of the state-court decision at the time it was made." *Greene*, 565 U.S. at 38 (citation and internal quotation marks omitted). "[Section] 2254(d)(1) requires federal courts to focus on what a state court knew and did, and to measure state-court decisions against [the Supreme Court]'s precedents as of the time the state court renders its decision." *Id.* (citations, internal quotation marks, and alterations omitted).

The relevant state court decision is the last court to rule on the merits of the petitioner's claim. *See Wilson*, 138 S. Ct. at 1192. Here, the relevant state court decision is the Illinois Appellate Court's October 22, 2012 decision affirming the judgment on direct appeal. Thus, in evaluating whether the Illinois Appellate Court's decision was "contrary to" clearly established federal law, the court is limited to Supreme Court precedent as of October 22, 2012.

## B.   State of the Law in 2012

At the time of the Illinois Appellate Court's decision in 2012, the Supreme Court had issued a number of Confrontation Clause decisions relevant here.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court explained that this provision, the Confrontation Clause, "prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (quoting *Crawford*, 541 U.S. at 51).[3] Under *Crawford*, the threshold question in determining whether the admission of Marquis's statements at Richter's trial implicates the

---

[3] As noted above, in evaluating whether the Illinois Appellate Court's decision was "contrary to" clearly established federal law, the court is limited to Supreme Court precedent as of October 22, 2012. *Clark* was decided in 2015. But the court (1) cites *Clark* for its summary of pre-October 22, 2012 cases and (2) as explained below, discusses *Clark* as necessary to address the parties' arguments about the Illinois Appellate Court's adoption of a *per se* rule.

Confrontation Clause is whether the statements were "testimonial." *Crawford*, 541 U.S. at 51–52.

On the facts of *Crawford* itself, the Court held that "statements by a witness during police questioning at the station house were testimonial." *Clark*, 576 U.S. at 243 (citing *Crawford*, 541 U.S. at 54). The Court's "decision in *Crawford* did not offer an exhaustive definition of 'testimonial' statements," but "stated that the label 'applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations.'" *Clark*, 576 U.S. at 243–44 (quoting *Crawford*, 541 U.S. at 68).

Two years later, the Supreme Court decided together the cases of *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813 (2006). There, the Court "[a]nnounc[ed] what has come to be known as the 'primary purpose' test." *Clark*, 576 U.S. at 244 (describing *Davis* and *Hammon*). The Court again did not "attempt[ ] to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial," but held: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. The Court concluded that a domestic violence victim's "statements to a 911 emergency operator during and shortly after her boyfriend's violent attack" were not testimonial (*Davis*), while a domestic violence victim's statements made to the police memorialized in a "battery affidavit" taken when the victim was isolated from her abusive husband were testimonial (*Hammon*). *Clark*, 576 U.S. at 244 (citing *Davis*, 547 U.S. at 820) (quotation marks omitted).

Because *Davis* and *Hammon* "involved statements to law enforcement officers," the Court "reserved the question whether similar statements to individuals other than law enforcement officers would raise similar issues under the Confrontation Clause." *Clark*, 576 U.S. at 244 (citing *Davis*, 547 U.S. at 823 n.2).

In 2008, the Supreme Court reiterated that "only *testimonial* statements are excluded by the Confrontation Clause." *Giles v. California*, 554 U.S. 353, 376 (2008) (emphasis in *Giles*). In dicta, *Giles* noted that "[s]tatements to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules." *Id.* But again, this point was dicta, the Court had expressly reserved the question in *Davis*,

and as discussed immediately below, the Court later expressly reserved the question again.

In 2011, *Michigan v. Bryant*, 562 U.S. 344 (2011), "further expounded on the primary purpose test."  *Clark*, 576 U.S. at 244.  The Court explained that "whether an ongoing emergency exists is simply one factor . . . that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation."  *Id.* at 245 (quoting *Bryant*, 562 U.S. at 366).  "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'"  *Clark*, 576 U.S. at 245 (quoting *Bryant*, 562 U.S. at 358).  Applying these principles, *Bryant* "held that the statements made by a dying victim" to a police officer "about [the victim's] assailant were not testimonial because the circumstances objectively indicated that the conversation was primarily aimed at quelling an ongoing emergency, not establishing evidence for the prosecution."  *Clark*, 576 U.S. at 245 (citing *Bryant*, 562 U.S. at 357 n.3).

As in *Davis*, "[b]ecause the relevant statements were made to law enforcement officers," the Court "again declined to decide whether the same analysis applies to statements made to individuals other than the police."  *Clark*, 576 U.S. at 245 (citing *Bryant*, 562 U.S. at 357 n.3); *see also Bryant*, 562 U.S. at 381 n.1 (Scalia, J., dissenting) ("I remain agnostic about whether and when statements to nonstate actors are testimonial.") (citing *Davis*, 547 U.S. at 823 n.2).

Thus, in 2012, when the Illinois Appellate Court issued its opinion in Richter's case, (1) in determining whether statements made to law enforcement officers were testimonial, the Supreme Court had repeatedly applied (in *Davis* and *Bryant*) the primary purpose test to each relevant statement (rather than adopting a bright-line rule); (2) in dicta, the Court had noted that "[s]tatements to friends and neighbors about abuse and intimidation and statements to physicians in the course of receiving treatment would be excluded, if at all, only by hearsay rules," *Giles*, 554 U.S. at 376; and (3) the treatment of statements made to people not in law enforcement was an open question expressly reserved in both *Davis* and *Bryant*.

In 2015, after the Illinois Appellate Court's decision in this case, the Supreme Court decided *Clark*.  *Clark* addressed the treatment of statements made to people not in law enforcement:

In this case, we consider statements made to preschool teachers, not the police.  We are therefore presented with the question we have repeatedly reserved: whether statements to persons other than law enforcement officers are subject to the Confrontation Clause.  Because

at least some statements to individuals who are not law enforcement officers could conceivably raise confrontation concerns, we decline to adopt a categorical rule excluding them from the Sixth Amendment's reach. Nevertheless, such statements are much less likely to be testimonial than statements to law enforcement officers. And considering all the relevant circumstances here, [the victim]'s statements clearly were not made with the primary purpose of creating evidence for Clark's prosecution. Thus, their introduction at trial did not violate the Confrontation Clause.

*Clark*, 576 U.S. at 246.

*Lisle v. Pierce*, 832 F.3d 778 (7th Cir. 2016), described the state of the law in 2007 through the time of *Lisle* as follows:

*Crawford*, *Davis*, and *Hammon* all involved statements made to law enforcement. At the time of the last state court decision in this case in 2007, and even up until now, the Supreme Court has not yet applied *Crawford* to statements made to people who are not law enforcement officers. The Court also has declined to adopt a "categorical rule excluding . . . from the Sixth Amendment's reach" statements made to individuals who are not law enforcement officers, *see Ohio v. Clark*, 576 U.S. ——, 135 S. Ct. 2173, 2180–81, 192 L.Ed.2d 306 (2015), *citing Davis*, 547 U.S. at 823 n.2, 126 S. Ct. 2266, so that question remains open in Supreme Court jurisprudence.

*Lisle*, 832 F.3d at 782.

As *Lisle* further explained, "the Supreme Court had not held in 2007 that a statement to someone other than a law enforcement officer can be testimonial under *Crawford*." *Id.*; *see also United States v. Norwood*, 982 F.3d 1032, 1044 (7th Cir. 2020) (explaining that "[i]t was not until" *Clark* in 2015 "that the Supreme Court had an opportunity to explain how the primary purpose test applies to statements made to someone who is not a law enforcement officer"). That remained true through the time of the Illinois Appellate Court's 2012 decision in this case and until *Clark* in 2015. In *Clark*, the Court declined to exclude statements to non-law enforcement officers categorically from Sixth Amendment analysis and applied the primary purpose test. But again, *Clark* was decided after the Illinois Appellate Court's decision in this case; in *Clark*, the Court noted that such statements were much less likely to be testimonial than statements to law enforcement; and the Court has never held (in *Clark* itself or after) that a statement to a person not in law enforcement was testimonial.

10

### C. The Illinois Appellate Court's 2012 Decision

As noted above, on October 22, 2012, the Illinois Appellate Court rejected Richter's Confrontation Clause claim. The court discussed *Crawford*, *Davis*, *Giles*, legal scholarship, and case law from other jurisdictions. *Richter*, 977 N.E.2d at 1274–80. The court adopted a rule that there must be government involvement for a statement to be testimonial. *E.g.*, *id.* at 1279 ("[A]bsent government involvement in eliciting or receiving an accusatory hearsay statement, that statement does not constitute testimonial hearsay."), 1280 ("the rule we adopt here" is "that government involvement is required for a statement to be deemed testimonial hearsay"). The court concluded that Marquis's statements to family members, neighbors, coworkers, her work supervisor, a therapist, and her attorney—none of whom were government officials—were not testimonial and did not implicate the Confrontation Clause. *Id.* at 1283–84.

The court summarized its decision as follows:

> Adhering to the Supreme Court's guidance in *Crawford* and *Davis*, we reject defendant's contention that the admission of Dawn's numerous hearsay statements violated his sixth amendment right to confrontation. Here, the evidence showed that the statements regarding [Richter's] threats to kill [Marquis] were made (1) in response to questions primarily by friends, family members, and coworkers who inquired of [Marquis] for various reasons or (2) were volunteered by [Marquis] to that same audience, undoubtedly for a host of reasons that had nothing to do with ensuring [Richter] was incarcerated but, instead, everything to do with her concern that [Richter] might kill her. We need not, however, speculate as to the reasons for the questions put to [Marquis] or [Marquis's] willingness to make the statements at issue. Simply put, according to United States Supreme Court doctrine, [Marquis's] statements at issue in this case did not constitute testimonial hearsay because there was no government involvement in eliciting or receiving them.

*Richter*, 977 N.E.2d at 1283–84. Some language above reflects considerations similar to the primary purpose test, in which the court evaluates whether the primary purpose of the statements was to "create an out-of-court substitute for trial testimony." *Clark*, 576 U.S. at 245 (quoting *Bryant*, 562 U.S. at 358). But the court did not expressly apply the primary purpose test; instead, the court adopted a rule that government involvement was necessary for a statement to be testimonial.

**D. Section 2254(d)(1) Analysis**

In the context of the law existing at the time, the Illinois Appellate Court's adoption of a *per se* rule that statements to non-government officials cannot be testimonial was not "contrary to" *Crawford* or any other clearly established federal law as of October 22, 2012.

Richter argues, "At no time has the Supreme Court of the United States of America held that government involvement was a necessary prerequisite for hearsay statements to be deemed to be testimonial." [26] at 5. That is true, but as discussed above, by explicitly reserving the question in *Davis* (2006) and *Bryant* (2011), the Supreme Court made clear that there was no controlling precedent on the issue at the time of the Illinois Appellate Court's 2012 decision. The 2012 decision was not contrary to clearly established law when there was none. *See Norwood*, 982 F.3d at 1044 (as noted above, explaining that "[i]t was not until" *Clark* in 2015 "that the Supreme Court had an opportunity to explain how the primary purpose test applies to statements made to someone who is not a law enforcement officer"); *Lisle*, 832 F.3d at 781–84 (rejecting habeas challenge due in part to lack of clearly established precedent on whether statements made to people who are not law enforcement officers are testimonial); *see also Long v. Pfister*, 874 F.3d 544, 549 (7th Cir. 2017) (en banc) ("The Justices insist that a principle be made concretely applicable to the problem at hand before it may be used on collateral review.").

On reply, Richter argues that "the Illinois Appellate Court in Richter's direct appeal did not conduct any such analysis regarding whether or not the statements were testimonial, and merely adopted a *per se* rule that holds that statements to non-law enforcement can never be testimonial." [30] at 4–5. Richter concludes, "It is this *per se* rule, and the refusal to examine the statements themselves, that is a violation of the U.S. Supreme Court jurisprudence." [30] at 5. Richter cites an Illinois Supreme Court case, *People v. Stechly*, 870 N.E.2d 333 (2007), and a number of out-of-circuit cases to support this argument and the proposition that "the U.S. Supreme Court's 'approach has been to steer away from generalized, abstract pronouncements and instead to focus on the particular statements under consideration.'" [30] at 4 (quoting *Stechly*, 870 N.E.2d at 354).

It is true that the Court's consistent approach—running through *Crawford*, *Davis*, and *Bryant*—had been in 2012 (and has been until now) to undertake an individualized analysis of the statements using the primary purpose test rather than adopt bright-line rules. Applying the primary purpose test to Marquis's statements would have been fully appropriate, more consonant with the general trend in the Court's Confrontation Clause decisions as of 2012 (but again, at the

12

time not yet concretely applied to the non-law enforcement context), and after *Clark*, correct in retrospect. But at the same time, without *Clark* and the benefit of hindsight, there simply was no clearly established law at the time with respect to statements to non-law enforcement officers, leaving nothing to foreclose the approach the Illinois Appellate Court took.

The fact that, unlike the state court, the Supreme Court later declined to adopt a categorical rule excluding from Sixth Amendment analysis statements to non-law enforcement officers does not change the § 2254(d) analysis. As the Seventh Circuit has explained, "[f]ederal habeas law does not require state courts to predict what the Supreme Court will do in future cases." *Lisle*, 832 F.3d at 784. Moreover, although *Clark* declined to adopt a categorical rule, the Court in that case went on to determine that the statement at issue, made by a child in response to a teacher who was investigating whether the child was a victim of abuse and needed immediate help, was not testimonial. 576 U.S. at 251. As noted above, both in 2012 and now, the Court has never deemed testimonial statements made to non-law enforcement personnel. *Lisle*, 832 F.3d at 782.

The Illinois Appellate Court's references in the summary of its decision to Supreme Court precedents ("Adhering to the Supreme Court's guidance in *Crawford* and *Davis*" and "according to United States Supreme Court doctrine," *Richter*, 977 N.E.2d at 1283–84) do not suggest the Illinois Appellate Court thought the Supreme Court had resolved whether government involvement was a necessary prerequisite for statements to be testimonial. Earlier in the opinion, the court explained: "[W]e believe that the rule we adopt here—namely, that government involvement is required for a statement to be deemed testimonial hearsay—is the better-reasoned rule . . . and is more consistent with *Davis*, *Crawford*, and *Giles*." *Id.* at 1280. But in the same paragraph, the court acknowledged that this question was open. *Id.* Thus, the Illinois Appellate Court's references to Supreme Court precedents do not make the decision "contrary to" clearly established federal law.

The cases Richter cites for the proposition that the adoption of a *per se* rule was "a violation of the U.S. Supreme Court jurisprudence" are not relevant to the § 2254(d)(1) analysis. None of the cases is a U.S. Supreme Court decision, and § 2254(d)(1)'s analysis expressly turns on "clearly established Federal law, as determined by the Supreme Court of the United States."

As discussed above, the substance of Richter's argument appears to be based on the "contrary to" clause rather than the "unreasonable application" clause. Even so, the Illinois Appellate Court's decision was not an "unreasonable application of" clearly established federal law for the same reason that it was not

13

"contrary to" clearly established federal law—namely, there was no clearly established federal law at the time of the 2012 decision.

In sum, the Illinois Appellate Court's determination that the admission of Marquis's statements at trial did not violate Richter's Confrontation Clause rights was not "contrary to" or an "unreasonable application of" clearly established federal law under § 2254(d)(1). Accordingly, the amended petition is denied.

## II.    Certificate of Appealability and Notice of Appeal Rights

Rule 11 of the Rules Governing Section 2254 Cases states that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The court declines to issue a certificate of appealability. Richter cannot make a substantial showing of the denial of a constitutional right, nor can he show that reasonable jurists would debate this resolution of the claims.

Richter is advised that this is a final decision ending his case in this court. If Richter wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Richter need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Richter wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).

Any Rule 59(e) motion must be filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing a notice of appeal until the Rule 59(e) motion is ruled on. *See* Fed. R. App. P. 4(a)(4)(A)(iv).

Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing a notice of appeal until the Rule 60(b) motion is

ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## III.  Motion for Extension of Time

Richter filed a motion seeking an extension of time so that he may find counsel to replace Brodsky.  [45].  The motion explains that Stateville Correctional Center is on lockdown due to the COVID-19 emergency and so he cannot consult with other potential attorneys to replace Brodsky.

There is no reason to delay these proceedings.  The amended petition was fully briefed with the help of counsel in November 2017.  [30].  The court does not need additional briefing from the parties; thus, assistance of counsel would not enhance the presentation of the issues.  Accordingly, the motion for extension of time is denied.

## IV.  Motion for Attorney Representation

Richter later filed a motion for attorney representation, seeking the appointment of Andrea D. Lyon as his attorney.  [49].  The motion explains that a different attorney who represented Richter in an unrelated civil matter contacted Lyon, who is willing to take on the case if appointed by the court.

The court has fully resolved all issues in this opinion.  Thus, Lyon's appointment is not necessary.

The motion references a possible *Brady* claim regarding Hoffman's treatment by the Florida police.  However, the *Brady* claim is not raised in the petition and would be untimely at this point.  *See* 28 U.S.C. § 2244(d).  Appointing Lyon to represent Richter would not change that fact.

## V.  IFP Application

Richter seeks leave to proceed *in forma pauperis*.  [48].  This motion is denied as moot because Richter already paid the filing fee on June 30, 2016.

## CONCLUSION

The amended habeas corpus petition, [26], is denied on the merits.   The court declines to issue a certificate of appealability.   The motions for an extension of time, [45], IFP [48], and attorney representation, [49], are denied.

Dated: March 31, 2021                    /s/ Martha M. Pacold

16